IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 06-cv-00821-LTB

DANIEL RHAMES,

    Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

    Plaintiff, Daniel Rhames, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for supplemental security income, filed pursuant to 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND the case for further proceedings as set forth below.

I. STATEMENT OF THE CASE

    Plaintiff seeks judicial review of the Commissioner's denial of his application for supplemental security income filed on December 23, 2002. His application was initially denied on April 14, 2003. [Administrative Record ("AR") 35] At Plaintiff's request, an Administrative Law Judge (ALJ) conducted an evidentiary hearing on November 30, 2004. [AR 34, 92, 331]

The ALJ subsequently issued a written ruling on February 8, 2005. [AR 24] The ALJ first noted that Plaintiff had filed a previous application for disability benefits, which was denied on October 23, 2002. [AR 24] Because the ALJ found that Plaintiff had failed to establish good cause to reopen the prior application, the ALJ only considered Plaintiff's allegations of disability as of October 24, 2002, pursuant to 20 C.F.R. § 416.1457(c)(1). [AR 25, 334] As such, the ALJ's discussion and consideration of evidence prior to that date was limited for the purpose of determining the effects of Plaintiff's chronic health problems on his current level of functioning. [AR 25]

The ALJ denied Plaintiff's application on the basis that Plaintiff was not disabled as defined by the Social Security Act. [AR 21] The ALJ found that although Plaintiff was not able to return to his past relevant work, he was able to make an adjustment to work which exists in significant numbers in the national economy based on his residual functional capacity (RFC) for sedentary work, and his age, education and work experience (Step Five). [AR 25, 31] On February 28, 2006, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's determination, making the denial final for the purpose of judicial review. [AR 7] *See* 20 C.F.R. § 416.1481. Plaintiff timely filed his complaint with this court on April 28, 2006, in which he seeks review of the SSA Commissioner's final decision.

## II. FACTS

Plaintiff was 44 years old on the date of the ALJ's order, and has his high school degree plus some minimal college work. [AR 71, 310, 335] He had worked as a carpenter and a kitchen helper. [AR 30, 77] Plaintiff alleged that he became disabled in September 1994, when he hurt

his back on a construction site. [AR 54, 210]  Plaintiff asserted that the injuries that limit his ability to work are his back, neck and shoulder pain, numbness in his left leg, and "carpel tunnel in right hand." [AR 66]

The medical records indicate that Plaintiff underwent a lumber disc excision in September of 1997, and a follow up surgery sometime thereafter related to a post-operative infection. [AR 210]  Ultimately, Plaintiff was diagnosed with failed lumbar spine surgery syndrome and undiagnosed thoracic spine pain. [AR 212]  In 1999, an orthopedic surgeon opined that Plaintiff was not a candidate for additional surgery and that he considered Plaintiff to be "100% disabled because of his restricted range of motion and muscle spasm and the symptomatic degenerative discs in his lumbar spine." [AR 208]

Dr. Julie Colliton performed an Independent Medical Examination on June 13, 2000, related to a workers' compensation determination, which noted a slight loss of lumbar lordosis, a guarded yet functional range of motion, and normal tone, muscle bulk, and strength in the lower extremities. [AR 26]  Dr. Colliton concluded that Plaintiff was not a candidate for additional surgery or IDET therapy and, as a result, Plaintiff had reached maximum medical improvement and that he had a 21% whole person impairment rating. [AR 105]  Also in June of 2000, John McAward, a physical therapist, performed a Functional Capacity Evaluation which rated Plaintiff at a sedentary demand classification. [AR 117]  The report concluded that Plaintiff would be able to perform part-time sedentary work, with restrictions, for 2 to 4 hours per day as tolerated. [AR 117]

A neurologist, Dr. Catherine Willner, diagnosed Plaintiff with chronic pain syndrome, iatrogenic narcotic dependence, and a history of failed back syndrome and chronic infection, now improved, in November of 2001. [AR 125, 304] Plaintiff went back to Dr. Willner in January of 2003 for increased pain. [AR 126] At that time he exhibited a mildly antalgic gait, and pain on seated straight leg raising, but no significant weakness in his lower extremities. [AR 26] An MRI scan reveled spinal stenosis at the L5-S1 and L3-L4 levels, with disc protrusions at the L3-L4 and L4-L5 levels, moderate to moderately severe neural foraminal narrowing on the left and mild to moderate neural foraminal narrowing on the right. [AR 122-124] Dr. Willner diagnosed multi-level stenosis and probably some degree of pseudoclaudication, meaning intermittent limping caused by lumbar spinal stenosis. [AR 124] At this time Dr. George Maxted, Plaintiff's primary care physician, assessed spinal stenosis with disk protrusion, multiple levels, and chronic pain with narcotic dependence, as well as poor pain control. [AR 195]

In February of 2003, Plaintiff saw Dr. Cyril A. Bohachevsky, for non-surgical spine care related to the "stabbing, burning and aching" pain in his back and left leg. [AR 140] Dr. Bohachevsky noted mild tenderness in the thoracolumbar spine, positive straight leg raising on the left, and a decreased range of motion in Plaintiff's back, that lacked about 50% with flexion and 75% with lumbar extension. [AR 141] Dr. Bohachevsky assessed Plaintiff with lumbar disk degeneration and lumbar spinal stenosis. [AR 142] A March 2003 EMG revealed an abnormal exam with chronic inactive L5 radiculopathy. [AR 143] Dr. Bohachevsky and his colleague opined that Plaintiff would not benefit from surgery. [AR 167]

In April 2003, Dr. Alan Ketelhohn, a nonexamining DDS physician, reviewed Plaintiff's records and concluded that he was capable of performing light work in that he could:  lift 20 pounds occasionally and 10 pounds frequently; sit and stand and/or walk about 6 hours in an 8-hour workday; and frequently climb, balance, kneel, crouch and crawl, as well as occasionally stoop.  [AR 145-52]

During this time Dr. Maxted continued to treat and manage Plaintiff's pain with medications.  In July 2003,  Plaintiff reported a flare up after working in the garden and also that he was using a cane.   [AR 192]    Epidural steroid injections were only temporarily helpful in managing Plaintiff's pain.  [AR 153, 157-166, 189]

In October 2003, Plaintiff reported to Dr. Maxted new right hand pain and pain in his right leg.  [AR 188]  At this time he also saw Dr. Bohachevsky for increased pain in his back after he lifted something incorrectly, and pain in his finger.   [AR 156]  An injection in his finger in December 2003 did not help and, in January of 2004, Plaintiff reported the same level of pain in his finger to Dr. Maxted.  [AR 184, 186-87]  In January and February of 2004, Plaintiff reported increased left leg pain to Dr. Maxted. [AR 183-84]

In February of 2004, Plaintiff consulted Dr. Kim Furry, an orthopedic surgeon, for his right finger pain, weakness and swelling.  [AR 154]  Dr. Furry diagnosed MP pain and arthritis, and recommended anti-inflammatory medication. [AR 155]

In April 2004, Plaintiff reported leg pain and spasms, as well as sleeping problems, to Dr. Maxted.  [AR 176, 180]  In May 2004, Plaintiff reported continued hand pain and a increase in back pain.  [AR 179]  Another injection in his finger was unsuccessful. [AR 176-78]

5

On July 14, 2004, Dr. Maxted completed a Medical Source Statement in which he opined the Plaintiff's spinal stenosis and lumbar disc disease with disc protrusion at multiple levels resulted in the following limitations: Plaintiff should be able to lift 10 pounds occasionally and 5 pounds frequently; he was able to sit or stand and/or walk for a half-hour at a time, no more than two hours per day; he would have to recline more that once a day to relieve his symptoms; he should never bend, stoop, squat, crawl or knell; he should climb stairs and ladders or reach occasionally, and he should not use his legs for repetitive movements. Dr. Maxted opined that Plaintiff could work 4 hours in a day, and that he would have to miss work four to six days per month, due to his chronic pain. He also noted Plaintiff's pain and medication would affect his ability to concentrate. [AR 206-07]

On September 8, 2004, Dr. Bohachevsky completed a Medical Source Statement in which he opined that: Plaintiff could lift 10 pounds occasionally; he was able to sit and stand and/or walk for a half-hour at a time, for a total of three hours per day; he would have to recline more than once a day to relieve his symptoms; he could occasionally bend, stoop, squat, crawl, knell, climb stairs or a ladder, and reach; and he should only occasionally use his legs for repetitive movements. Dr. Bohachevsky opined that Plaintiff could work 6 hours in a day, and that he would have to miss work four to six days per month, due to his pain. He also noted Plaintiff's pain would affect his ability to concentrate. [AR 169-170]

In August and September of 2004, at the request of the Division of Vocational Rehabilitation, Plaintiff underwent a psychological evaluation. [AR 308 ] Dr. Ed Cotgageorge's assessment was that Plaintiff's functional ability was consistent with a pain patient struggling with

an attempt to return to work. [AR 312] Dr. Cotgageorge opined that psychological intervention would be likely necessary for Plaintiff "to begin to deal with his addiction, pain and psychological distress" as Plaintiff was depressed, confused and addicted to his pain medications. [AR 313] Dr. Cotgageorge's diagnostic impressions were: pain disorder due to psychological factors and a general medical condition, depressive disorder secondary to his injury; prescription drug addiction; and a current GAF of 45. [AR 313]

On September 16, 2004, physical therapist John McAward did a second Functional Capacity Evaluation which concluded that Plaintiff remained in the sedentary classification and that he could work 3 to 4 hours a day, as tolerated, but not on a day-to-day basis. [AR 234-35] The evaluation recommended that Plaintiff continue to pursue schooling to become a home inspector, as he might be able to perform such work part time. [AR 235]

On November 12, 2004, Plaintiff underwent an MRI after complaining to Dr. Bohachevsky about increased pain, which revealed a large disc extrusion at L5-S1, resulting in severe spinal canal stenosis, as well as slight interval progression of the L3-L4 disc bulge and left foraminal-lateral disc protrusion, resulting in moderate-severe left neuroforaminal narrowing and moderate central canal stenosis. [AR 306] In response to Plaintiff's attorney's questionnaire, Dr. Bohachevsky opined that Plaintiff suffered from a disorder of the spine resulting in a compromise of a nerve root or the spinal cord on November 26, 2004. [AR 314] It was Dr. Bohachevsky's opinion that Plaintiff suffers from lumbar spinal stenosis resulting in pseudoclaudication. [AR 315] Because it was Dr. Bohachevsky's opinion that Plaintiff could not do physical work on a sustained basis, he recommended vocational rehabilitation. [AR 316]

At the hearing, Plaintiff testified that his daily chronic pain limited his range of motion, and his ability to stand and sit, as well as walk, lift, push, pull, bend, crawl, kneel, climb stairs, etc. [AR 335-39]  Plaintiff also testified as to his minimal ability to engage in daily activities. [AR 344-47]  He discussed his various pain management treatments including narcotics, rest, heat, ice, exercise, and use of a TENS unit. [AR 336-342]  Plaintiff also testified regarding his attempt to engage in vocational rehabilitation. [AR 349]

### III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert,* 482 U.S. 137, 137, 107 S.Ct. 2287, 107 S.Ct. 2287 (1987); *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 416.920.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c).  If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20

C.F.R. § 416.920(d). Step Four then requires the claimant to show that the impairment(s) and assessed RFC prevents him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(g). The claimant is entitled to benefits if the Commissioner cannot establish that he can perform an alternative work activity and that this type of job exists in the national economy. The Commissioner may rely upon the Medical Vocational Guidelines (the "grids") to meet this burden. *Bowen v. Yuckert, supra,* 482 U.S. at 146; *see also Heckler v Campbell,* 461 U.S. 458, 461-462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)(the grids consist of a matrix of four factors – physical ability, age, education, and work experience – and rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy and, as such, direct a conclusion as to whether work exists that the claimant could perform).

## IV. SSA's RULING

In concluding that Plaintiff was not disabled under the Social Security Act, the ALJ first determined that Plaintiff had not performed any substantial gainful activity since October 24, 2002, the relevant period under consideration (Step One). [AR 25, 31]

The ALJ next found that Plaintiff's "discogenic and degenerative disorders of the lumbar spine" constituted severe medically determinable impairments (Step Two).  [AR 25, 31]   The ALJ specifically rejected that Plaintiff had a severe depressive order or any medically determinable upper extremity impairment.  [AR 26]   The ALJ further found, based on the medical evidence of record, that Plaintiff did not have an impairment that met or equaled any impairment found in the Listing of Impairments which would deem it to be so severe for presumptive disability (Step Three).  [AR 13, 31]

As a result, the ALJ went on to determine whether Plaintiff retained the RFC to perform the requirements of his past relevant work.  When assessing Plaintiff's RFC, the ALJ determined that Plaintiff remained capable of performing a full range of sedentary exertional work, in that he was able to:  lift and/or carry up to 10 pounds occasionally and lesser weight more frequently; sit for 6 hours in an 8-hour workday; and stand and/or walk for at least 2 hours in an 8-hour workday with normal breaks.  [AR 30]

Given this RFC assessment, the ALJ concluded that Plaintiff was no longer capable of performing his past relevant work as a carpenter and a kitchen helper (Step Four).  [AR 30]   However, after considering Plaintiff's assessed RFC and his vocational profile (age, education and work experience), and the fact that the ALJ determined that Plaintiff had no exertional limitations, the ALJ found that all of the criteria of Medical-Vocational Rule 201.28 were met.  *See* 20 C.F.R. Part 404, Subpart P, App. 2.  As a result, the ALJ applied Medical-Vocational Rule 201.28 to find the existence of occupations available in the national economy was met by administrative notice.  [AR 31]   The ALJ thus concluded that Plaintiff was "not disabled" and

denied Plaintiff's application (Step Five). [AR 31] The SSA Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision final. [AR 7] This appeal followed.

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). I examine the record as a whole, including whatever in the record fairly detracts from the weight of the final decision and, on that basis, determine if the substantiality of the evidence test has been met. *Casias v. Secretary*, *supra*, 933 F.2d at 800 (*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). With regard to the application of the law, reversal may be appropriate when

the Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ANALYSIS

A.  Mental Impairment Assessment

On appeal, Plaintiff firstalleges error at Step Two of the sequential analysis when the ALJ concluded that his depression did not constitute a severe mental impairment.  The ALJ found that while Plaintiff had recently reported symptoms of depression, and Dr. Cotgageorge noted evidence of depression in his August/September 2004 evaluation, the ALJ concluded that Plaintiff's "lack of medication, treatment, or complaints of depression to any physician during the period of time at issue fail[s] to support the finding of a severe depressive disorder."  [AR 26]

Plaintiff claims that the ALJ's ruling that his depression was not severe was erroneous because the evidence was clear that his depression constitutes a mental impairment that significantly impacts his ability to engage in basic work activities.  Furthermore, because he had "signs and symptoms" of depression, Plaintiff contends that the ALJ should have assessed whether his depression  met the criteria of a listed medial impairment under 20 C.F.R. Part 404, Subpart P. App. 1 12.00(b) and 12.04(a), and it should have been considered when assessing his RFC.

At Step Two of the sequential evaluation, the Commissioner is to determine whether the claimant has a medically determinable "impairment or combination of impairments which significantly limits [his] ... ability to do basic work activities." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997); 20 C.F.R. § 416. 920(b).  Basic work activities are "the abilities and

aptitudes necessary to do most jobs" and include:  physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921.

Furthermore, where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner is "required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly" pursuant to 20 C.F.R. § 416.920a.  *Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1048 (10th Cir. 1993)(*quoting Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991)).  First, there must be a determination of the presence or absence of certain medical findings relevant to the claimant's ability to work (Part A).  20 C.F.R. § 416.920a(b)(2).  Second, when the claimant establishes these medical findings, the degree of functional loss resulting from the impairment must be rated by considering the following areas of function: activities of daily living; social functioning; concentration, persistence, or pace; and deterioration or decompensation in work or work-like settings (Part B).  20 C.F.R. § 416.920a(b)(3).  Third, after rating the degree of loss, a determination is made as to whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(c).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(c)(2).  Finally, if a

Listing is not met, an RFC assessment must be performed employing the evaluation of the limitations considered in Part B. 20 C.F.R. § 416.920a(c)(3-4).

The ALJ's order fails to reveal proper consideration of Plaintiff's depression. First, it is unclear if the ALJ's conclusory statement that the evidence "fail[s] to support the finding of a severe depressive disorder" was a conclusion that Plaintiff failed to prove a medically determinable impairment, or if he failed to prove that it was severe. More importantly, the order fails to apply the multi-step process for evaluating a mental impairment, as well as the related procedural documentation, as required by 20 C.F.R. § 416.920a. The "regulations require that a particular procedure be followed in evaluating a mental impairment and that a standard document be completed at the initial, reconsideration, ALJ hearing, and Appeals Council levels." *Birnell v. Apfel,* 45 F.Supp.2d 826, 832 (D. Kan. 1999)(*quoting Hill v. Sullivan*, *supra*, 924 F.2d at 974).

"While the mere presence of a mental disturbance does not automatically indicate a severe disability, it cannot be ignored by the ALJ." *Plummer v. Apfel,* 186 F.3d 422, 434 (3rd Cir. 1999)(*citing Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir.1988)). Although Plaintiff did not allege that a mental impairment impacted his ability to work, and he did not testify at the hearing in this matter as to any mental limitation beyond an inability to concentrate on "bad days" due to his chronic pain, Dr. Cotgageorge's extensive psychological functioning assessment revealed a clinical interview indicating depression and a conclusion that Plaintiff suffered from "pain disorder due to psychological factors and general medical condition; Depressive disorder secondary to his injury." [AR 66, 313, 345] I note that Dr. Cotgageorge assessed Plaintiff's global assessment functioning (GAF) score of 45 that, standing alone, does not establish an impairment that would

14

interfere with the ability to perform basic work activities, but does indicate serious symptoms or serious or any serious impairment in social, occupational, or school functioning. *See Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. 2004).

Therefore, the evidence related to Plaintiff's depression was sufficient to require the ALJ to adequately address and assess Plaintiff's depression. The ALJ erred in failing to do so. Accordingly, I remand this case for proper consideration of Plaintiff's alleged mental impairment as set forth in 20 C.F.R. § 416.920a. *See Andrade v. Secretary, supra,* 985 F.2d at 1050.

B.  Spinal Impairment Assessment

In addition, on remand I direct a re-evaluation of the ALJ's determination that Plaintiff's severe back impairment did not meet or equal a listed impairment at Step Three of the sequential analysis. The ALJ ruled that Plaintiff's severe back impairment did not meet or equal Listing 1.04, based on the medical evidence of record, which provides in relevant part as follows:

> 1.04  *Disorders of the spine* (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> . . . . .
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively, as defined in 1.00B2b.

As to Listing 1.04C, the ALJ ruled that Plaintiff's spinal condition did not met the criteria because the evidence supported a conclusion that he could still ambulate effectively. [AR 26-7] Plaintiff argues that the ALJ misapplied Listing 1.00B2b – which regulates the inability to ambulate effectively – in that the ALJ "overstated" the rule. Listing 1.00B2b states that:

> The inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

The ALJ noted that the inability to ambulate is defined "as an extreme limitation in the ability to walk which interferes seriously with the ability to independently initiate, sustain or complete activities" and further that it requires "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device." In addition, the ALJ noted that in order to ambulate effectively, "a person must be able to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, and must be able to

16

travel without companion assistance to and from a place of employment or school." The ALJ listed the following applicable examples: "inability to walk without the use of a walker, two canes or crutches, an inability to use standard public transportation, or carry out simple ambulatory activities such as shopping or banking." [AR 27]

The ALJ's interpretation and application of the definition of the ability to ambulate is not excessively narrow and, as such, does not constitute error. *See generally Pruitt v. Barnhart,* 2007 WL 461020 (D. Kan. 2007)("[b]ecause the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively). Furthermore, the ALJ's assessment that Plaintiff maintained the ability to ambulate is supported by the evidence in the record. As found by the ALJ, the records indicate that while Plaintiff had made occasional use of one cane, "throughout most of the period of time at issue, [Plaintiff] had demonstrated the ability to ambulate without any assistive device, [had] engaged in a number of activities which demonstrate his ongoing ability to ambulate effectively, and Dr. Bohachevsky further indicated that [Plaintiff] could ambulate without an assistive device at a limited pace and over a limited distance." [AR 27] Although Plaintiff refers me to evidence in the record that suggests his limited ability to get around, the ALJ's conclusion regarding Listing 1.04C is supported by sufficient evidence in the record.

However, I agree with Plaintiff that the ALJ's order fails to refer to record evidence in support of his conclusory determination that Plaintiff did not meet the criteria of Listing 1.04A. The ALJ ruled that "[a]lthough Dr. Bohachevsky completed a form in which he suggested that [Plaintiff's] condition did indeed meet all of the criteria of Listing 1.04, the evidence of record

17

fails to document motor, sensory, and reflex loss, or consistent limitation of motion of the spine."

The ALJ's order fails to specifically address the criteria of Listing 1.04A, and the conclusion that the evidence does not support motor, sensory and reflex loss or consistent limitation of motion of the spine is not adequately discussed or supported in the order. "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. " *Andrade v. Secretary, supra,* 985 F.2d at 1047 (*citing Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984)). Therefore, on remand of this matter I direct a re-evaluation of the ALJ's determination that Plaintiff's severe back impairment did not meet or equal Listing 1.04A.

C.  RFC & Credibility Assessment

Plaintiff's final arguments are that the ALJ erred in determining that he retained the RFC to perform a full range of sedentary work, as such determination is not supported by substantial evidence, and that the ALJ failed to adequately assess his credibility in the context of this determination. In light of my remand directing further consideration of Plaintiff's impairments at Steps Two and Three in the sequential evaluation process, I direct the ALJ to reassess the RFC determination.

Accordingly, IT IS ORDERED that the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner with direction to remand it to the ALJ for further proceedings consistent with this Order.

Dated: March   12  , 2007 in Denver, Colorado.

                                      BY THE COURT:

                                        s/Lewis T. Babcock  
                                      LEWIS T. BABCOCK, CHIEF JUDGE